[S.F. No. 23205. In Bank. Aug. 28, 1975.]

DELORES J. SMITH, Individually and as Administratrix, etc.,
Plaintiff and Appellant, v.
WESTLAND LIFE INSURANCE COMPANY,
Defendant and Respondent.

COUNSEL

Donald P. McCullum and Charles O. Triebel for Plaintiff and Appellant.

John R. Pascoe, Cullinan, Hancock, Rothert & Burns and Cushing, Cullinan, Hancock & Rothert for Defendant and Respondent.

OPINION

SULLIVAN, J.—Plaintiff Delores J. Smith brought this action as the widow and administratrix of the estate of Solomon Smith, Jr., against Westland Life Insurance Company[1] (Westland) to recover $10,000 under a temporary life insurance contract allegedly insuring the life of her husband at the time of his death. Westland denied liability, claiming that no contract of insurance was in effect at the time Smith died. After a nonjury trial, the court entered judgment in favor of defendant Westland and against plaintiff. Plaintiff appeals.

The facts of the case are not in dispute. On April 8, 1963, Reed Evans,[2] a soliciting agent for Westland, called on Solomon Smith at his home for the purpose of selling him a life insurance policy. At this meeting, Smith agreed to purchase the following insurance coverage: (1) basic life insurance in the amount of $3,000, (2) mortgage security protection in the amount of $8,000, (3) accidental death benefits in the amount of $3,000 and (4) a provision for waiver of premium in the event of total disability. Evans informed Smith that, based on his age and his being a standard risk, the monthly premium for such coverage would be $14.66. Satisfied with these terms, Smith signed an appropriate application prepared by Evans. Smith paid the first month's premium and received from Evans a conditional receipt,[3] sometimes referred to as a "binder."

---

[1]Plaintiff originally named Reed Evans, a soliciting agent for Westland, as a defendant in the suit. However, plaintiff's action was dismissed as to Evans upon the sustaining without leave to amend of the latter's demurrer. The ground for dismissal was that Evans incurred no personal liability on the contract forming the basis of the action since he was acting only as an agent for Westland in the matter here involved.

[2]At the time of his meeting with Smith, Evans was employed by Robert W. Marshall, Jr., a general agent for Westland.

[3]This conditional receipt provided as follows:

"It is understood and agreed that the payment referred to on the reverse side of this receipt is made and accepted subject to the following conditions:

"1. That if the Company at its Home Office after investigation shall be satisfied that on the date hereof, or on the date of the medical examination for such insurance, whichever

Evans delivered the signed application and the premium payment to his employer, Robert W. Marshall, Jr., a general agent for Westland, who in turn submitted them to the insurance company. Westland began its investigation to determine whether Smith was eligible for the above coverage.

About April 15, 1963, at the request of Westland, Smith was examined by a medical doctor who transmitted to Westland a report indicating that Smith was a "first class" risk.[4] At the same time, Westland requested an investigative report by an independent agency as to Smith's employment, finances, health and habits of living; this was received by the company on April 16, 1963.

Westland thereupon completed the processing of Smith's application and on April 24, 1963, issued to him a policy of insurance which "modified" the coverage applied for by eliminating the provisions for accidental death benefits and for waiver of premium in the event of total disability, and by increasing the premium to $19.23 per month. The reason given by Westland for these changes was that Smith's employment as a railroad laborer was considered to be hazardous.

Westland delivered the policy to its general agent, Marshall, with instructions that it would not take effect until Smith had signed an amendment to the application specifying the proposed changes in coverage and premium rate and Westland had received a copy of the

is later, each person proposed for insurance was insurable and entitled under the Company's rules and standards to insurance on the plan and for the amount applied for at the Company's published rates corresponding to the age of each person proposed for insurance, the insurance protection applied for shall by reason of such payment [except as otherwise provided in item (16) of the application] take effect from the date hereof or from the date of such medical examination, whichever is later. In any event, the amount of insurance becoming effective under the terms of this receipt is limited to the extent that in the event of the death of the Proposed Insured, the total liability of the Company shall not exceed $250,000 inclusive of life insurance and accidental death benefit in force with the Company on the date of the application. If less than the full first premium has been paid, such insurance protection shall nevertheless become effective on said date but shall be deemed temporary only and to expire at the end of the period for which the amount tendered hereunder would provide such insurance on a pro rata basis.

"2. That if any check, draft or money order given in payment of the premium is not paid on presentation, this receipt shall be void.

"3. That if said application is not approved and accepted by the Company within sixty (60) days from the date hereof, then insurance applied for shall not become effective, and the amount tendered shall be returned. Any delay in the return of the amount tendered shall not be construed as approval of the application."

[4]The report form required the examining doctor to indicate whether he would categorize the applicant as a "first class," "medium," or "poor" health risk.

amended application together with an additional $4.57 for the first month's premium.

Evans, the soliciting agent, promptly went to Smith's home and submitted the modified policy to him for his approval, informing Smith of the increased monthly premium and of Westland's unwillingness to issue a policy providing for either accidental death benefits or a waiver of premium. Smith refused to accept the policy as amended and refused to pay the additional premium. Evans left, taking the policy with him; he said nothing to Smith about terminating negotiations or refunding the premium. Evans informed his employer, Marshall, of these events and suggested that the latter, a more experienced salesman, call on Smith and try to persuade him to accept the policy as modified.

After a number of unsuccessful attempts, Marshall finally arranged to visit Smith at his home on the evening of May 17, 1963. He again submitted the proposed policy to Smith and explained the changed provisions. The latter once again refused to execute the amended application or to pay the additional premium. Concluding the conversation Marshall told Smith that the premium he had paid would be refunded.[5]

On the following morning, May 18, Smith died in an automobile accident. Informed of the death one or two days later, Marshall returned the policy to Westland and requested that the company refund Smith's premium. On May 23, 1963, Westland mailed to the Smith residence its check in the sum of $14.66. On July 29, 1963, plaintiff was appointed administratrix of her husband's estate. On December 20, 1963, she notified Westland of Smith's death and demanded payment of benefits under the form of policy originally applied for. Westland refused to make any payments, asserting that no insurance was in force at the time of Smith's death. This action followed.

The trial court found the facts to be substantially as we have related them above and concluded that the conditional receipt for the first

---

[5]Marshall testified that in cases in which Westland rejected the applicant outright and declined to issue a policy, the company would generally send him a check which he would deliver to the applicant in refund of his premium at the time he informed the applicant of the rejection. However, in cases such as the one at bench, in which Westland was simply asking to have an amendment made, no refund would be issued unless and until the applicant refused delivery of the amended policy and it was returned to the company.

premium delivered to Smith on April 8, 1963, created a provisional contract granting temporary insurance on his life.

In rendering its decision in favor of Westland, the court ruled that as a matter of law a contract of temporary insurance is terminated upon the rejection of the application by the insurance company and the giving of notice thereof to the insured. In so ruling, the court held that a return of the premium paid by Smith was not a condition precedent to the effective termination of his temporary insurance coverage, in spite of the fact that Westland was under 'a contractual obligation to refund the premium if it declined to issue the desired policy.[6] Applying this rule and basic principles of contract law,[7] the court further concluded that Westland's issuance of an insurance policy in different form than that described in Smith's application constituted both a rejection of the application and a counteroffer which Smith never accepted. On this basis, the court held that the temporary insurance on Smith's life was effectively terminated prior to his death by Westland's rejection of his application and by its notice of said rejection to Smith through its agents Evans and Marshall. Judgment was entered accordingly. This appeal followed.

Westland concedes before us, as it did in the court below, that under California law, upon Smith's execution of the application for insurance on April 8, 1963, and his contemporaneous payment of the first month's premium, there was immediately created a contract of temporary insurance on his life with coverage as applied for. This contract is based upon the language of the conditional receipt given Smith for the premium payment.[8] Under the terms of this receipt, if the applicant paid the premium at the time he applied for insurance, coverage would take effect as of the date of the application or the date of medical examination, whichever was later, provided that the company deter-

---

[6]Under paragraph 3 of the conditional receipt, Westland was obligated to return the premium if it did not approve and accept the application within 60 days from the date thereof. (See fn. 3, *ante.*)

[7]In finding that Westland had rejected Smith's application, the trial court applied the common law rule of contract law, embodied in Civil Code section 1585, which requires an acceptance to be absolute and unqualified, so that any attempt to modify the terms of an offer in response thereto constitutes a rejection of the offer and a new counterproposal.

[8]See footnote 3, *ante;* see also *Turner v. Investors Syndicate Life Ins. & Annuity Co.* (1973) 33 Cal.App.3d 424 [108 Cal.Rptr. 47], where similar language in a conditional receipt was held to give rise to a temporary contract of insurance upon receipt of the application and payment of the premium, or at the least, upon completion of the medical examination. (*Id.*, at pp. 425-427.)

mined that he was entitled to the insurance on the plan requested. In *Ransom v. Penn Mutual Life Ins. Co.* (1954) 43 Cal.2d 420 [274 P.2d 633], we held that such a provision in an insurance application "gives rise to a contract of insurance immediately upon receipt of the application and payment of the premium, and that the proviso that the company shall be satisfied that the insured was acceptable at the date of the application creates only a right to terminate the contract if the company becomes dissatisfied with the risk before a policy is issued." (*Id.,* at p. 424.)

Thus, the sole issue confronting us in the case at bench is whether, prior to Smith's death, Westland effected a termination of the above contract of temporary insurance.

Plaintiff urges that this question must be answered in the negative. She argues that Westland's issuance of an amended policy and the communication of this fact to her husband by Westland's agents in an effort to persuade him to accept the modified form of coverage, unaccompanied by a return of the premium paid, were not sufficient to terminate the temporary contract of insurance prior to her husband's death. She asserts that an insurer does not terminate temporary coverage until the applicant receives both unequivocal notice of rejection and a refund of his premium. As the rejection was not final and as Westland did not refund Smith's premium until after his death, plaintiff contends that the temporary insurance was still in effect when her husband died.

To begin with, we note that the record contains substantial evidence to support the trial court's finding that on the evening before Smith's death, Westland, through its general agent Marshall, informed him that the company refused to issue the policy applied for and promised to refund his premium. Therefore, we must assume for purposes of this appeal that before he died Smith received unequivocal notice of the rejection of his application. Our inquiry therefore narrows to this crucial point: whether a contract of temporary insurance can be terminated only by (a) actual rejection of the application for insurance communicated to the insured by appropriate notice thereof and (b) refund of the premium payment.

We intentionally left this question unanswered in *Ransom.*[9] Furthermore, our attention has not been directed to, nor have we found, any reported California decision purporting to authoritatively determine this

---

[9]In *Ransom* we stated: "We need not decide, therefore, whether, as suggested by some courts, such a contract can be terminated only by actual rejection of the application and return of the premium payment." (43 Cal.2d at p. 425.)

issue.[10] Nor do we find substantial guidance in the decisions of our sister states.

We have been referred to decisions of sister states containing language largely dicta supportive of a number of theories, ranging from the view that termination occurs immediately upon the insurer's uncommunicated decision to reject the application (see e.g., *Leube* v. *Prudential Ins. Co. of America* (1947) 147 Ohio St. 450 [72 N.E.2d 76, 78], quoting from 44 C.J.S. (1945) Insurance, § 230, p. 960), to the view that actual refund of

[10]Dicta in a number of cases indicate that such temporary insurance continues *at least* until the company notifies the insured of its decision to reject his application. (See e.g., *Thompson* v. *Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 912 [109 Cal.Rptr. 473, 513 P.2d 353] and *Wernecke* v. *Pacific Fidelity Life Ins. Co.* (1965) 238 Cal.App.2d 884, 886-888 [48 Cal.Rptr. 251].)

Furthermore, our decision in *Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432 [74 Cal.Rptr. 895, 450 P.2d 271] requires us to reject the trial court's conclusion that Westland's issuance of an amended policy constituted a rejection of the application and that the communication of this fact to Smith in the context of continuing negotiations regarding his acceptance of the proposed modifications was a notification of said rejection sufficient to terminate the temporary insurance. As in the case at bench, the applicant in *Slobojan* paid the first month's premium quoted by the agent at the time he applied for life insurance coverage and received in return a conditional receipt substantially identical to the one at bench. Thereafter, the agent notified the applicant, Slobojan, that the company declined to issue the requested policy at the quoted rate, but would be willing to provide identical coverage if Slobojan would sign an amendment agreeing to pay $.44 extra per month. In response, Slobojan stated that he was inquiring about premium rates from other companies and would notify the agent when he decided whether or not he wished to accept the amended policy.

Slobojan died without having accepted the modified policy either orally or in writing and without having paid the additional $.44 for the first month's premium. Holding that the temporary insurance which arose when Slobojan initially paid the first month's premium in advance was still in effect at the time of his death, we expressly rejected the insurer's contention that its issuance of a modified policy constituted a rejection of the application, which terminated any temporary coverage upon notification of the insured thereof. (*Id.,* at p. 441.)

In the case at bench, the trial court's determination that Smith's temporary insurance was effectively terminated when he was notified of Westland's issuance of an amended policy is contrary to the holding of this court in *Slobojan* and must be rejected. We acknowledge that the modifications proposed by Westland in its amended policy were far greater than the small increase in premium requested by the insurer in *Slobojan.* However, application of strict contract principles, relied upon by the trial court in the case at bench, to the effect that a qualified acceptance constitutes a rejection of the original offer (Civ. Code § 1585; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 136, pp. 132-133) would have required us to find a rejection in both *Slobojan* and the present case on the basis of the insurers' refusal to accept the application as submitted. As in *Slobojan,* we are unwilling to take this overly technical approach in the present case to find termination of the temporary insurance.

It is significant to note that in its brief submitted to this court, Westland concedes that it continued to afford temporary insurance to Smith at least until his final refusal to accept the policy at his last meeting with Westland's agent, Marshall, at which time he was advised that his premium would be returned.

the premium is required in order to effectively terminate temporary coverage (see e.g., *Reck* v. *Prudential Ins. Co. of America* (1936) 116 N.J.L. 444 [184 A. 777, 778], cited with approval in *Allen* v. *Metropolitan Life Ins. Co.* (1965) 44 N.J. 294 [208 A.2d 638, 647]). The most frequently stated rule appears to be that a temporary contract of insurance is terminated by rejection of the application and notice thereof to the insured. (See e.g., 9 Couch on Insurance (2d ed. 1962) § 39:207, pp. 562-563; Meyer, Life and Health Insurance Law (1972) § 5:14, pp. 126-127; 44 C.J.S. (1945) Insurance, § 230 (3), pp. 966-967; 43 Am. Jur.2d (1969) Insurance, § 218, pp. 278-279; Anno., Temporary life, accident, or health insurance pending approval of application or issuance of policy (1948) 2 A.L.R.2d 943, 982; Comment, *Life Insurance Receipts: The Mystery of the Non-Binding Binder* (1954) 63 Yale L.J. 523, 532; *Service* v. *Pyramid Life Insurance Company* (1968) 201 Kan. 196 [440 P.2d 944, 960]; *Colorado Life Co.* v. *Teague* (Civ.App. Texas 1938) 117 S.W.2d 849, 853-854; *Stonsz* v. *Equitable Life Assur. Soc.* (1936) 324 Pa. 97 [187 A. 403, 406]; *Starr* v. *Mutual Life Ins. Co. of New York* (1905) 41 Wash. 228 [83 P. 116, 118].)

Nevertheless we are not persuaded by these authorities to adopt a rule which would permit the insurer to terminate temporary insurance merely by its rejection of the application for the policy or by such rejection and notice thereof to the applicant. Instead, an analysis of the reasons which this court found convincing in *Ransom* (43 Cal.2d 420) in initially recognizing the concept of temporary insurance, impels us to embrace the rule urged by plaintiff in the instant case as to effecting a termination of such coverage.

In establishing for California a rule of temporary insurance, we acknowledged the existence in this country of two distinct but contradictory lines of authority on this question. (*Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43 Cal.2d at pp. 423-424.) We chose to align California with those jurisdictions recognizing temporary insurance, for a number of reasons: first, we found the language of the conditional receipt to be ambiguous and susceptible of the interpretation that coverage would be provided immediately, subject to the insurance company's right to terminate coverage if it did not choose to issue the policy applied for. Resolving this ambiguity against the insurer, we held that coverage arose immediately upon completion of the application and payment of the premium. Second, noting that the insurance company drafted the language of the conditional receipt, we reasoned that if the insurer intended to condition its liability under the policy upon its prior

approval of the application, it could have easily used clear and unequivocal language to indicate its intention. Third, we concluded that an ordinary person paying the premium at the time he applied for insurance and receiving in return a receipt which stated that coverage was to be effective as of the date of application, had a reasonable expectation that he would secure the benefit of immediate coverage. Finally, we noted the obvious advantage gained by the insurance company in receiving payment of the premium at the time of application. We therefore concluded that it would be unconscionable to allow the insurer, who had required from the applicant payment of the first premium, to escape the obligation of coverage which the applicant could reasonably assume and expect that the insurer was thereby undertaking. (*Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43 Cal.2d 420, 425.) All of these reasons, which convinced us that "a contract of insurance arose upon [the insurer's] receipt of the completed application and the first premium payment" *(id.),* similarly impel us to hold that such coverage is not terminated until the applicant receives from the insurer both a notice of the rejection of his application and a refund of his premium.

We turn to examine the language of the conditional receipt in the instant case which as we have explained "gives rise to a contract of insurance immediately upon receipt of the application and payment of the premium . . . ." (*Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43 Cal.2d 420, 424; see fn. 3, *ante.*) It makes issuance of a *permanent* policy under the terms specified subject to company approval of the application and obligates the insurer to refund the applicant's premium if it fails to give its approval within 60 days. But the receipt is silent as to how and when the *temporary* coverage immediately created upon its execution may, or will, be *otherwise* effectively terminated if and when the insurer rejects the application. This silence casts a shroud of ambiguity over the receipt, making it susceptible of at least three reasonable interpretations: (1) that coverage is automatically terminated upon rejection of the application by the insurer or upon the expiration of 60 days without acceptance or rejection, whichever is sooner; (2) that coverage is terminated by rejection of the application and notice thereof to the insured; (3) that coverage is not terminated until the applicant receives both notice of rejection and a refund of the premium to which he is entitled by the terms of the receipt.[11] We are required to resolve this ambiguity most strongly in favor of the insured. (*Crane* v. *State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115-116 [95 Cal.Rptr. 513, 485 P.2d

[11]See text accompanying footnote 10, *ante,* for authorities in support of each of these interpretations.

1129, 48 A.L.R.3d 1089]; *Ensign* v. *Pacific Mut. Life Ins. Co.* (1957) 47 Cal.2d 884, 888 [306 P.2d 488]; *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914]; *Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43 Cal.2d at p. 425; 1 Couch on Insurance (2d ed. 1959) § 14:36, p. 616.) ■ Accordingly, we hold that, where, as here, the insurer has received an application for insurance together with payment of the premium and thereafter decides to reject it, the contract of insurance immediately created upon the receipt of the application and payment of the premium is not terminated until (a) the insurer has actually rejected the application and by appropriate notice communicated such rejection to the insured and (b) refunded the premium payment to the insured.

We have also been persuaded to reach this conclusion by the fact that the insurance companies who draft the conditional receipts have been aware of their obligation to provide temporary insurance thereunder since 1954 when we decided *Ransom.* They have nevertheless failed to clarify the language used in such receipts so as to eliminate their patent ambiguities and have seemingly been content to endure the resultant litigation in an effort to avoid the obligation imposed by the line of authorities of which *Ransom* is representative. (See e.g., *Thompson* v. *Occidental Life Ins. Co., supra,* 9 Cal.3d 904; *Slobojan* v. *Western Travelers Life Ins. Co., supra,* 70 Cal.2d 432; *Young* v. *Metropolitan Life Ins. Co.* (1969) 272 Cal.App.2d 453 [77 Cal.Rptr. 382, 78 Cal.Rptr. 568]; *Koorstad* v. *Washington Nat. Ins. Co.* (1967) 257 Cal.App.2d 399 [64 Cal.Rptr. 882]; *Wernecke* v. *Pacific Fidelity Life Ins. Co., supra,* 238 Cal.App.2d 884; *Brunt* v. *Occidental Life Ins. Co.* (1963) 223 Cal.App.2d 179 [35 Cal.Rptr. 492]; *Metropolitan Life Insurance Company* v. *Grant* (9th Cir. 1959) 268 F.2d 307; *Wood* v. *Metropolitan Life Insurance Company* (N.D. Cal. 1961) 193 F.Supp. 371, affd. (9th Cir. 1962) 302 F.2d 802.) In the instant case, although the conditional receipt contemplated rejection as well as approval of the application, defendant failed to include therein any express provisions as to how or when the temporary coverage was to be terminated in the event defendant rejected the application. In such circumstances, the ambiguity for which defendant is responsible must be resolved against it. (Civ. Code, § 1654; *Thompson* v. *Occidental Life Ins. Co., supra,* 9 Cal.3d at p. 912; *Slobojan* v. *Western Travelers Life Ins. Co., supra,* 70 Cal.2d at p. 440; *Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43 Cal.2d at p. 425.)

In addition to the ambiguous language of the conditional receipt, the rationale of the case law supporting a contract of temporary insurance,

rests essentially upon the principle of effectuating the reasonable expectations of the ordinary applicant.[12] (*Thompson* v. *Occidental Life Ins. Co., supra,* 9 Cal.3d at p. 911; *Slobojan* v. *Western Travelers Life Ins. Co., supra,* 70 Cal.2d at p. 440; *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 270 [54 Cal.Rptr. 104, 419 P.2d 168]; *Sabella* v. *Wisler* (1963) 59 Cal.2d 21, 30 [27 Cal.Rptr. 689, 377 P.2d 889]; *Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 868-869 [27 Cal.Rptr. 172, 377 P.2d 284]; *Prickett* v. *Royal Ins. Co. Ltd.* (1961) 56 Cal.2d 234, 238 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711]; *Arenson* v. *Nat. Automobile & Cas. Ins. Co.* (1955) 45 Cal.2d 81, 83 [286 P.2d 816]; *Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43 Cal.2d at p. 425; see also Keeton, *Insurance Law Rights at Variance with Policy Provisions* (1970) 83 Harv.L.Rev. 961, 969-972.)

In *Ransom* we recognized that an ordinary person who pays the premium at the time he applies for insurance is justified in assuming that payment will bring immediate protection, regardless of whether or not the insurer ultimately decides to accept the risk. (43 Cal.2d at p. 425.) Subsequent cases have held the layman's expectation of complete and immediate coverage upon payment of the premium to be so strong that if the insurer wishes to avoid its obligation of providing such protection it must not only use clear and unequivocal language evidencing its intent to limit temporary coverage pending its approval of the policy, but must also call such limiting condition to the attention of the applicant.[13] In the

---

[12]This rationale is in harmony with our observation on a number of occasions that insurance policies are generally contracts of adhesion—a term which "refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and under such conditions that the 'adherer' cannot obtain the desired product or service save by acquiescing in the form agreement." (*Steven* v. *Fidelity & Casualty Co., supra,* 58 Cal.2d at p. 882; see also, *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at pp. 269-270; *Logan* v. *John Hancock Mut. Life Ins. Co.* (1974) 41 Cal.App.3d 988, 993 [116 Cal.Rptr. 528], and *Young* v. *Metropolitan Life Ins. Co., supra,* 272 Cal.App.2d at p. 460.) The conditional receipts which embody the terms of temporary contracts of insurance fall within this definition of adhesion contracts. (*Allen* v. *Metropolitan Life Ins. Co., supra,* 208 A.2d 638, 644.)

[13]In *Young* v. *Metropolitan Life Ins. Co., supra,* 272 Cal.App.2d 453, the applicant Young applied for life insurance under a plan providing double indemnity in the event of accidental death. He paid the premium at the time of application and received a conditional receipt which expressly and unambiguously stated that if the applicant died before the company had approved the policy, the company would pay the benefits provided by the policy, *not including accidental death benefits.* Young died before his application was approved. The insurer claimed that its liability under the policy was limited by the terms of the conditional receipt.

While the court found that the language of the application and receipt clearly made

absence of proof by the insurer that it satisfied both of these require-
ments, courts have held that the coverage provided under a temporary
contract of insurance "is that which the ordinary layman, acting in the
ordinary course of business, reasonably may expect by virtue of that
transaction . . ."—namely, complete and immediate coverage upon
payment of the premium. (*Wernecke* v. *Pacific Fidelity Life Ins. Co.,
supra,* 238 Cal.App.2d at p. 887; see also *Young* v. *Metropolitan Life Ins.
Co., supra,* 272 Cal.App.2d at p. 461 and *Steven* v. *Fidelity & Casualty
Co., supra,* 58 Cal.2d at pp. 868-869.)[14]

When, therefore, as in the case at bench, a contract of temporary
insurance arises upon the insurer's receipt of an application for insurance
together with the first premium payment, the expectation of the
applicant thereby given recognition actually emerges from two conjoined
acts—his signing of the application and his payment of the premium. In
the words of *Ransom* "such a person would assume that he was getting
immediate insurance for his money. . . ." (*Ransom* v. *Penn Mutual Life
Ins. Co., supra,* 43 Cal.2d 420, 424.) This reasonable expectation on the
part of the applicant would, in our view, extend to a continuance of such
coverage until the insurer had nullified the two factors responsible for its
existence—the application for the policy by rejection and notice of
rejection, and the payment of premium by a refund of it. Unless the
insurer "manifest[s] this intention [to refuse permanent coverage] by the
return of the premium within a reasonable time, . . . the applicant could

company approval a condition precedent to the insurer's full liability under the policy,
the court nevertheless ruled that the company must be held liable to the full extent under
the policy applied for, including accidental death benefits, unless it satisfied the burden
of proving that the provisions limiting the company's liability were called to the
applicant's attention or that the applicant had read them. In so holding, the court
reasoned that *"the very acceptance of an advance premium by the carrier tends naturally
toward an understanding of immediate coverage though it be temporary and terminable. . . .
In short, to the ordinary layman, payment of the insurance premium constitutes payment for
immediate protection,* and it is unlikely that he would carefully read the fine print
contained in a receipt unless he was given the incentive to do so by the carrier's agent."
(*Id.,* at p. 461, italics added; see also *Wernecke* v. *Pacific Fidelity Life Ins. Co., supra,* 238
Cal.App.2d at p. 887.)

[14]On the basis of this same reasoning, California courts have held that temporary
coverage may exist even in cases where the conditional receipt was never delivered to the
applicant. (*Koorstad* v. *Washington Nat. Ins. Co., supra,* 257 Cal.App.2d at p. 405.)
Rather, the agent's failure to provide the applicant with a receipt for the initial premium
is merely seen as one of the factors which must be considered in determining the
insured's reasonable expectations under the circumstances. This failure is not in itself
sufficient to destroy the insured's expectation of full and immediate coverage that arises
upon payment of the premium and hence does not preclude the creation of temporary
insurance providing such protection. (*Koorstad* v. *Washington Nat. Ins. Co., supra,* 257
Cal.App.2d at p. 405.)

assume that his insurance was effective." (*Reck* v. *Prudential Ins. Co. of America, supra,* 184 A. 777, 778, cited with approval in *Allen* v. *Metropolitan Life Ins. Co., supra,* 208 A.2d 638, 647.)

A rule requiring that such temporary insurance can be terminated only by notice of rejection and refund of the premium appears to us to be not only logical but fair. It at once eliminates uncertainty as to coverage and controversy as to effective notice of rejection. When the insurer notifies the applicant of the rejection of his application but does not refund his premium, its action is uncertain and confusing. On the one hand, the notice of rejection indicates that the permanent policy the applicant requested will not be issued; on the other, the retention of the premium indicates that "the immediate insurance [he was getting] for his money" (*Ransom, supra* at p. 424) is still continuing. This uncertainty in which the applicant finds himself can be dissolved by conditioning termination on both notice of rejection and refund of premium. Such a rule will at the same time go far in eliminating risk of unfairness to the applicant where the circumstances surrounding the rejection of his application and notification thereof to him are disputed.

Our decision to adopt this rule is fortified by the consideration recognized in *Ransom* that it is unconscionable for an insurance company to hold premiums without providing coverage. "There is an obvious advantage to the company in obtaining payment of the premium when the application is made. . . ." (*Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43 Cal.2d at p. 425.) Payment of the premium causes the applicant to believe he is immediately covered and hence reduces the likelihood that he will withdraw the application during the period of investigation. (*Slobojan* v. *Western Travelers Life Ins. Co., supra,* 70 Cal.2d at p. 441; *Brunt* v. *Occidental Life Ins. Co., supra,* 223 Cal.App.2d at p. 186; Anno., Temporary life, accident, or health insurance pending approval of application or issuance of policy (1948) 2 A.L.R.2d 943, 946; Comment, *Life Insurance Receipts: The Mystery of the Non-Binding Binder, supra,* 63 Yale L.J. 523, 524.) Furthermore if the company accepts the application and issues a permanent policy, it is thereby able to earn premiums from the earliest date possible. (Comment, *"Binding Receipts" in California* (1955) 7 Stan.L.Rev. 292, 293-294.) In any event the company has the use of the money during the period of investigation. (Anno., Temporary life, accident, or health insurance pending approval of application or issuance of policy, *supra,* 2 A.L.R.2d 943, 946.) Having secured the benefits flowing from acceptance of premiums in advance, an insurer may not terminate its resulting obligation to provide temporary

interim protection without accompanying notice of rejection with a refund of the applicant's premium, thereby eliminating any expectation on the part of the insured that he remains covered. (*Slobojan* v. *Western Travelers Life Ins. Co., supra,* 70 Cal.2d at pp. 440-441; *Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43 Cal.2d at p. 425.)

■ Such a rule is most appropriate in the case before us. Here, Smith applied for a particular plan of coverage at a premium rate which the agent, in Smith's presence, determined by reference to Westland's published rate charts. Smith paid the first month's premium and received a receipt giving rise to immediate interim coverage under the plan described in his application. Subsequently he submitted to and passed the medical examination requested by the company. Upon determining that Smith was not insurable under the terms applied for, Westland did not reject the application and direct its agents to so notify Smith. Rather, the company simply issued an "amended policy," to take effect when the insured signed the amendment and paid the additional premium. At the two subsequent meetings with Smith, Westland's agents Evans and Marshall tried to persuade him to accept the modified policy. Although the agents' sales efforts proved unsuccessful on both occasions, the policy was not returned to the company, nor was a premium refund requested or forthcoming from Westland's office, until after Marshall learned of Smith's death.

. Westland concedes that temporary coverage continued at least until the final meeting between Smith and Marshall on the evening before Smith's death, when for the first time Marshall indicated that the premium would be refunded. Yet we encounter substantial difficulty in finding effective termination at this point. The only evidence presented on the question of what transpired at this crucial meeting was the testimony of Westland's general agent, Marshall. Smith's testimony is forever lost.

Furthermore, Marshall's description of his final encounter with the deceased fails to establish that Smith could no longer, at this point, have entertained a reasonable belief that his temporary coverage continued. This was the second time that Westland's agents had tried to sell him the amended policy. He had flatly refused to accept the proposed modifications at the first meeting with Evans; yet his unqualified refusal did not deter the company's agents from trying again. Smith could have reasonably assumed that the sales efforts would persist, in spite of what Marshall told him.

At no time did Smith receive written notice of rejection of his application or of termination of his temporary insurance. Oral communications between Smith and Westland's agents were generally shrouded in terms of his acceptance of a policy with minor modifications. The conditional receipt which formed the basis for this interim coverage provided no enlightenment on the question of termination. Under these circumstances, Smith could reasonably expect that his temporary insurance remained in effect during the course of his negotiations with Westland's agents and would continue in effect until he received the premium refund promised by Marshall. Although there may be sufficient evidence to support a finding that Smith received notice of the rejection of his application prior to his death, the record is clear that he did not receive a refund of his premium before his fatal accident. We therefore conclude that at the time of his death the coverage afforded by the conditional receipt was in full force and effect, and that plaintiff is entitled to recovery according to its terms.

The judgment is reversed and the cause is remanded to the trial court with directions to determine the amount to which plaintiff is entitled under the insurance in effect at the time of decedent's death, to make and file findings of fact and conclusions of law in conformity with the views herein expressed, and thereafter to enter judgment accordingly in favor of plaintiff and against defendant for the amount of insurance so determined.

Wright, C. J., Tobriner, J., and Mosk, J., concurred.

**CLARK, J.**—I dissent.

The unequivocal rejection of the insurance application more than one month after acceptance of the first month's premium, coupled with the promise to return the premium, prevented any reasonable expectation of continued temporary insurance coverage. Any ambiguity was eliminated. By requiring return of premium as a condition to terminate the policy, the majority contravenes all authority considering the question and frustrates the obvious intentions of the parties.

A party exercising the right to terminate a contract is not required to return consideration at the time of communicating the rescission. (Civ. Code, §§ 1691, 1693; *Neet* v. *Holmes* (1944) 25 Cal.2d 447, 457 [154 P.2d 854]; *McCall* v. *Superior Court* (1934) 1 Cal.2d 527, 535 [36 P.2d 642, 95 A.L.R. 1019]; *Gantner* v. *Johnson* (1969) 274 Cal.App.2d 869 [79

Cal.Rptr. 381]; Rest., Contracts, § 480; 12 Williston, Contracts (3d ed. 1970) p. 108 et seq.; 5 Corbin, Contracts (1960) p. 607 et seq.)

More specifically, insurance decisions hold that return of premium is not a condition precedent to cancellation of an insurance contract. (*Jensen* v. *Traders & General Insurance Co.* (1959) 52 Cal.2d 786, 799 [345 P.2d 1]; *Mangrum & Otter* v. *Law U. & R. Ins. Co.* (1916) 172 Cal. 497, 498 et seq. [157 P. 239]; 17 Couch on Insurance (2d ed. 1962) p. 539; 7 Williston, Contracts (3d ed. 1970) § 920, p. 605 et seq.) These authorities make it abundantly clear that no public policy requires the premium's return as a condition precedent to cancellation of express insurance; our majority proposes no public policy demanding stricter standards for the termination of *implied temporary insurance.*

It is anomalous to hold that an *express* policy of insurance may be cancelled by notification alone but that termination of *implied* temporary insurance requires something more. It is not surprising that all authority confronting this problem, including five decisions purporting to apply California law, has recognized temporary insurance may be terminated without return of the premium, termination becoming effective either on the insurer's uncommunicated determination to reject the application or on notice of rejection to the applicant. (*Metropolitan Life Insurance Company* v. *Wood* (9th Cir. 1962) 302 F.2d 802, 803 (purporting to apply California law); *Metropolitan Life Insurance Company* v. *Grant* (9th Cir. 1959) 268 F.2d 307, 310 (same); *Koorstad* v. *Washington Nat. Ins. Co.* (1967) 257 Cal.App.2d 399, 405 [64 Cal.Rptr. 882];[1] *Wernecke* v. *Pacific Fidelity Life Ins. Co.* (1965) 238 Cal.App.2d 884, 886-888 [48 Cal.Rptr. 251];[2] *Brunt* v. *Occidental Life Ins. Co.* (1963) 223 Cal.App.2d 179, 186 [35 Cal.Rptr. 492]; [3] *Service* v. *Pyramid Life Insurance Co.* (1968) 201 Kan. 196 [440 P.2d 944, 960]; *McLean* v. *Life of Virginia* (1971) 11 N.C.App. 87 [180 S.E.2d 431, 433]; *Littell* v. *Republic-Franklin Ins. Co.* (1965) 1 Ohio App.2d 524 [205 N.E.2d 580, 585]; *Leube* v. *Prudential Ins. Co. of America* (1947) 147 Ohio St. 450 [72 N.E.2d 76, 78]; *Stonsz* v. *Equitable Life Assur. Soc.* (1936) 424 Pa. 97 [187 A. 403, 406, 107 A.L.R.

[1] " '[I]t will be deemed the parties intended the insurance to be effective forthwith, subject to termination upon notice from the company that the applicant is not insurable.' "

[2] After setting forth the language quoted in *Koorstad,* the court again returned to the subject—"upon payment of the premium requested he is insured until the company advises him it is not satisfied he is insurable under the plan selected."

[3] "[P]laintiff is covered from the date of his application (and premium payment) until the company expressed its dissatisfaction as to his acceptability."

178]; *Colorado Life Co.* v. *Teague* (Civ.App.Tex. 1938) 117 S.W.2d 849, 854; *Starr* v. *Mutual Life Ins. Co. of New York* (1905) 41 Wash. 228 [83 P. 116, 118]; see also, 9 Couch, Insurance (2d ed. 1962) § 39:207, pp. 562-563; Meyer, Life and Health Insurance Law (1972) § 5:14, pp. 126-127; 44 C.J.S., Insurance (1945) § 230 (3), pp. 966-967; 43 Am.Jur.2d (1969) Insurance, § 218, pp. 278-279; Anno., Temporary life, accident or health insurance pending approval of application or issuance of policy (1948) 2 A.L.R.2d 943, 982; Note, *Life Insurance Receipts: The Mystery of the Non-Binding Binder* (1954) 63 Yale L.J. 523, 532.)[4]

Although dissents were filed in two of the above cases, neither contended that the premium's return is a necessary condition precedent to effective termination of temporary insurance.

Absent an express unequivocal disclaimer, temporary insurance is implied from the filing of an application and paying the premium. This is so because delivery of the application and the premium leads a reasonable man to believe he is insured at that moment. (*Ransom* v. *Penn Mutual Life Insurance Co.* (1954) 43 Cal.2d 420 [274 P.2d 633].)

Because temporary insurance is provided only impliedly—not expressly—the implication should be rejected when the circumstances fail to warrant it. The reason for implying temporary insurance having been terminated, the insurance itself should be terminated. Only one month's premium having been paid in the instant case, no reasonable basis existed to assume that temporary insurance coverage would exceed the one-month period, the latter expiring prior to Smith's death. Moreover, once unequivocal rejection—coupled with a promise to return premium —is communicated to the applicant, no basis exists for believing that

---

[4]The majority claims some authority for a "view that actual refund of the premium is required in order to effectively terminate temporary coverage (see, e.g., *Reck* v. *Prudential Ins. Co. of America* (1936) 116 N.J.L. 444 [184 A. 777, 778], cited with approval in *Allen* v. *Metropolitan Life Ins. Co.* (1965) 44 N.J. 294 [208 A.2d 638, 647])." (*Ante,* p. 119, see also p. 123.) Neither case involved rejection of an application prior to death. Moreover, in speaking of return of the premium the court in *Reck* refers to failure to return premium within a "reasonable" time as giving *rise* to insurance—rather than dealing with the question before us: termination of insurance already in force. The court in *Allen,* although discussing the *Reck* holding, fully approved the principles of *Life Ins. Co. of No. America* v. *De Chiaro* (1961) 68 N.J.Super. 93 [172 A.2d 30], after quoting from that case the usual rule, " 'if he paid the advance premium, he would enjoy protection until his application is either accepted or rejected.' " (208 A.2d at pp. 647-648.) Thus, neither holding nor dicta of the New Jersey cases supports the view that return of premium is a necessary condition precedent to termination of temporary insurance.

insurance will continue. The majority concedes—as it must—the insurer unequivocally communicated its rejection of Smith's application, and promised to return the premium.[5]

I would affirm the judgment.

McComb, J., and Richardson, J., concurred.

---

[5]The majority states. *ante*. at page 117. "the record contains substantial evidence to support the trial court's finding that on the evening before Smith's death, Westland . . . informed him that the company refused to issue the policy applied for and promised to refund his premium. Therefore, we must assume for purposes of this appeal that before he died Smith received unequivocal notice of the rejection of his application."