461 A.2d 216

**Karen C. BIERER, Administratrix for the Estate of Daniel R. Bierer, III., and Karen C. Bierer, Individually and as Beneficiary**

**v.**

**NATIONWIDE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1983.

Filed April 29, 1983.

Reargument Denied July 8, 1983.

Petition for Allowance of Appeal Denied Jan. 16, 1984.

Harry J. Cancelmi, Jr., Waynesburg, for appellant.

James Hook, Waynesburg, for appellees.

Before POPOVICH, MONTGOMERY and VAN der VOORT, JJ.

POPOVICH, Judge:

On June 5, 1970, Daniel R. Bierer, III, appellee's husband, applied for and secured a life insurance policy in the amount of $10,000 from appellant, Nationwide Insurance Company. The policy contained a guaranteed insurability option rider which allowed the insured to apply for $10,000 additional insurance in five years. Douglas Black, appellant's agent who sold the original policy, came to appellee's home on April 28, 1975, for the purpose of explaining the aforesaid option rider. On that day, Mr. Bierer signed the application to purchase additional insurance as provided in the guaranteed option rider and received a new policy for the additional $10,000 insurance in return for a downpayment of $36.82,

which represented two month's premiums. The application and new policy, as well as the original policy, provided that the new policy would not become effective before the stated option date, June 18, 1975. On May 21, 1975, appellee's husband was killed in a mining accident. Subsequent to the insured's death, Nationwide paid the proceeds of the original policy but denied liability on the option rider policy and refunded the premiums which had been paid thereon.

The case went to trial in May, 1982, and a jury rendered a verdict in favor of appellee for the face amount of the policy together with interest from the date of the insured's death. Appellant's post-trial motions were denied, and judgment was entered on the verdict.

Appellant raises one question on appeal:

"Does a beneficiary have a right to recover from the insurance company where the insured, pursuant to a 1970 whole life policy, exercised a guaranteed insurability option, applied for additional insurance on April 28, 1975, with express language in the original policy and application making additional insurance policy coverage effective on the option date, June 18, 1975, paid advanced premium, received a delivered policy also stating policy effective date of June 18, 1975, but insured died May 21, 1975, prior to the effective date?"

The answer to this question hinges on the application of the facts of this case to the rule in *Collister v. Nationwide*, 479 Pa. 579, 388 A.2d 1346 (1978), cert. denied, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979). We find that the *Collister* rule applies and, accordingly, affirm the judgment below.

In *Collister*, appellant's husband applied to appellee, Nationwide Life Insurance Company, for life insurance. Appellee, through its agent, accepted $60.66 from appellant's husband at the time of the application. This amount represented a two month premium payment in exchange for which appellant's husband received a "conditional receipt." Appellant's husband was killed in an automobile accident before Nationwide had issued the policy applied for or rejected the application, and before the deceased had taken

a medical examination as required by the application.  Nationwide denied liability asserting that certain conditions contained in both the application and the conditional receipt had not been fulfilled by the appellant.  Indeed, Justice Pomeroy in his dissent, points to the clarity with which the conditions were conveyed in the receipt:

"Initially, it is important to note that we are not here dealing with a lengthy and complex document which is arguably incomprehensible to the average layman.  Rather, we are dealing with a short and explicit form of premium receipt presented and explained to the applicant when he signed the application and made a payment on account of initial premium.  As will be noted from the text of the receipt, attached to the majority opinion, the top line of the paper declares in capital 12-point letters that 'NO INSURANCE WILL BECOME EFFECTIVE PRIOR TO POLICY DELIVERY UNLESS THE ACTS REQUIRED BY THIS RECEIPT ARE COMPLETED.' The main text of the receipt, in 10-point type, then details the two steps to be completed, and plainly states that the insurance 'shall take effect and be in force ... from the date of the last medical examination' from which insurability is determined.  This is followed by the warning that 'Unless all acts required are completed, no insurance shall take effect hereunder.'  On the reverse side of the receipt form, under the heading 'IMPORTANT' appears a final admonition to the application.  It is in 14-point type, repeated here for the sake of completeness:

'The Company reserves the right to require a medical examination.  Until you can provide proof that you are insurable, the Company provides no insurance.

'If you are requested to have an examination, don't delay.  Make arrangements promptly.  There is no insurance until a satisfactory medical examination has been made and all the conditions of this receipt are completed.' "  *Collister, supra,* 479 Pa. at 601, 388 A.2d at 1357 (Pomeroy, J. dissenting).

The Supreme Court accepted appellant's argument that a temporary insurance contract came into being between appellant's husband and Nationwide at the time Nationwide accepted the application form and the first premium payment. The Court stated:

"To accept the insurer's argument that its liability is contingent on a condition precedent permits the insurer to hold itself immune from liability while it considers whether to accept or reject the risk ... or, as in the instant case, during the period between receipt of the application and premium deposit and the date of the medical examination, while at the same time enjoying the benefits that flow from immediate collection of the premium." *Id.*, 479 Pa. at 588, 388 A.2d at 1350.

Relying extensively on cases from other jurisdictions which had discussed the theory of temporary insurance contracts, the *Collister* court quoted *Smith v. Westland Life Insurance Company*, 15 Cal.3d 111, 123 Cal.Rptr. 649, 539 P.2d 433 (1975):

"While the court found that the language of the application and receipt clearly made company approval a condition precedent to the insurer's full liability under the policy, the court nevertheless ruled that the company must be held liable to the full extent under the policy applied for, including accidental death benefits, unless it satisfied the burden of proving that the provisions limiting the company's liability were called to the applicant's attention or that the applicant had read them. In so holding, the court reasoned that *'the very acceptance of an advance premium by the carrier tends naturally toward an understanding of immediate coverage though it be temporary and terminable .... In short, to the ordinary layman, payment of the insurance premium constitutes payment for immediate protection,* and it is unlikely that he would carefully read the fine print contained in a receipt unless he was given the incentive to do so by the carrier's agent.' (Citations

omitted.) (Emphasis in original.)" *Id.*, 479 Pa. at 589, 388 A.2d at 1351.

The high Court found that normal contract principles were no longer applicable in insurance transactions and that the reasonable expectations of the insured are now the controlling consideration in such cases. The Court stated that proper resolution of the question depends upon an analysis of the totality of the transaction involved:

"In situations where the circumstances of the transaction do not indicate that the insurer intended to provide interim insurance, but nevertheless show that the insurer accepted payment of the first premium at the time it took the application, it is then up to the insurer to establish by *clear and convincing evidence that the consumer had no reasonable basis for believing that he or she was purchasing immediate insurance coverage.*

The reasonable expectation of the insured is the focal point of the insurance transaction involved here. *E.g., Beckham v. Travelers Ins. Co.*, 424 Pa. 107, 117–18, 225 A.2d 532, 537 (1967). Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled.

Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (*whether they be applications, conditional receipts, riders, policies, or whatever*), the public has a right to expect that they will receive something of comparable value in return for the premium paid. Courts should also keep alert to the fact that the expectations of the insured are in large measure created by the insurance industry itself. Through the use of lengthy, complex, and cumbersomely written *applications,* conditional receipts, *riders,* and *policies,* to name just a few, the insurance industry forces the insurance consumer to rely upon the oral representations of the insurance agent. Such representations may or may not accurately reflect the contents of the written document and therefore the insurer is often in a position to reap the benefit of the insured's lack of

understanding of the transaction." (Emphasis added) *Id.*, 479 Pa. at 594, 388 A.2d at 1353.

The Court went on to state:

"If insurers wish to protect themselves from liability during the interim period between the taking of the application and approval (or between the application and successful completion of a required medical examination), all that need be done is to delay acceptance of the applicant's money until that time. If, on the other hand, the insurer wishes to enjoy the substantial benefits it receives by securing the customer's cash at the time of the taking of the application, it must return what the customer can reasonably expect that the insurer is selling: i.e., immediate coverage. Alternatively, the insurer could inform the prospective applicant, *before any money changes hands,* that it does not intend to give the customer anything in return for advance payment, and that the customer is actually paying money now for nothing because no insurance will take effect until approval. Such notification would have to be given *before* the consumer paid the initial premium in order to avoid placing that consumer at the psychological disadvantage of having to ask for a return of the premium if he or she is dissatisfied with such terms. Furthermore, any such notice must be made in a manner calculated to bring the facts of the transaction—that the customer is paying money now, but getting nothing until later—to the customer's attention in no uncertain terms. As such, the notice could not be printed on a receipt.

Only after such an unequivocal showing that the consumer is to be given no immediate benefits in return for his or her cash payment can a court say that the insurer has sustained its burden of establishing by clear and convincing evidence that the consumer could not reasonably have expected to receive immediate coverage in return for the payment of the required premium." (Emphasis in original). *Id.*, 479 Pa. at 597–98, 388 A.2d at 1355.

In the instant case, Nationwide argues that it has a full and complete contract defense since the original 1970 policy containing the guaranteed insurability option clearly stated that no additional insurance could be effective prior to the option date of June 18, 1975. Further, appellant argues that the original contract allowed the deceased to apply for additional insurance 60 days prior to the effective date, such application clearly stating that no insurance would be effective prior to June 18, 1975. The following point for charge incorporating this contract defense was submitted by appellant but disapproved by the trial court:

"(13) These principles of law must be applied to your determination of when the attachment of risk began in the Nationwide-Bierer transaction. Companies issuing insurance policies have the right to fix in the policy the date of its beginning. The parties to the contract may fix when the contract shall go into effect. The effective date of the contract may be specified in the policy at once, prior to issuance, or in the future. If there is no ambiguity, the contract speaks for itself. If the contract plainly sets forth that the obligations were to begin on a date certain, with no other date mentioned, you are not at liberty to interpret the contract otherwise."

Although the parties to an insurance contract may fix some future date as the effective date of the policy, *Collister* places a burden on the insurer to prove by clear and convincing evidence that the consumer had no reasonable basis for believing that coverage would not be immediately effective. The fact that the policy rider and application are unambiguous in their provisions does not, by itself, defeat the reasonable expectations of the consumer. We hold that the trial court did not err in disapproving appellant's Point for Charge No. 13.

Appellant also contends that a temporary insurance contract theory is inapplicable since there was no period of time in which the insured had to wait for review of the application. The option rider was for guaranteed insurance, health credentials being irrelevant. Nationwide argues that

in return for the two months premium paid in advance, the deceased received the benefit of knowing his life was going to be insured for an additional $10,000 as of June 18, 1975.

■ These grounds for distinguishing this case from *Collister* lack merit. The fact that a policy was issued immediately upon payment and that no medical exam had to be taken because the additional insurance was guaranteed, would more clearly indicate to a consumer that coverage would be immediate upon payment of premiums than where an application for insurance was expressly conditioned on the health of the applicant.

The jury heard the testimony of the insured's wife and the appellant's agent, who were both present when the option transaction occurred. Neither of those witnesses stated that the agent explained to Mr. Bierer that the additional $10,000 would not be effective until June 18, 1975. Appellant's arguments rest on the fact that the original policy, option rider, application and new policy all clearly indicated that the additional insurance under the option rider would not be effective until June 18, 1975. The Supreme Court announced in *Collister* that such evidence is not sufficient by itself to prove that the consumer did not reasonably expect to be covered upon payment of premiums.

Appellant has suggested several errors by the trial court in applying the *Collister* case in its charge to the jury and in certain evidentiary rulings. We have thoroughly reviewed the record and find that appellant's contentions of error lack merit.

For the above-stated reasons, we affirm the judgment in favor of appellee.

VAN der VOORT, J., files a dissenting statement.

VAN der VOORT, Judge, dissenting:

I respectfully dissent. I believe that the majority is

unnecessarily extending *Collister*.[1] While his dissenting opinion in *Collister* creates no precedent and cannot be cited as authority, the majority in the instant case are rewriting the contract and in this situation Justice Pomeroy's words are aptly written in *Collister* as follows: "It is not the function of a court to rewrite express and unambiguous terms in a contract to comport with what that court might deem a fairer result in a particular situation .... This presumably elementary aspect of the law of contracts is not changed because the contract pertains to insurance." *Collister*, 479 Pa. at 604, 388 A.2d 1346.

**1.** *Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979).