[Civ. No. 10041.   Third Dist.   Apr. 4, 1961.]

LEWIS G. BROWN, Respondent, v. CONTINENTAL GRAIN COMPANY (a Corporation), Appellant.

Dreher, McCarthy & Dreher for Appellant.

Coffee & Wolfe for Respondent.

SCHOTTKY, J.—Continental Grain Company, a corporation, has appealed from a judgment in favor of Lewis G. Brown in an action brought by him to recover the balance allegedly due for grain sold and delivered to Continental. Recovery was denied Continental on its cross-complaint to recover advance payments to Brown allegedly in excess of the value of the grain delivered.

In 1957, Brown, a grain grower, and Continental entered into two contracts for the sale of barley at $2.10 per hundredweight. The total amount of barley sold was approximately 2,334,000 pounds. Brown received the sum of $46,212.60 on account. The bill of sale provided that the balance due, ''if any, shall be paid upon completion of delivery, final computation to be based on outturn weights as determined by an official public weighmaster's certificate.'' It also provided that if the outturn weight were less than the weight upon which payment had been made, the seller would repay the buyer the amount of the overpayment.

Continental received a certain amount of grain from Brown and then asserted that the value of the amount of grain received did not equal the amount of prepayment. Brown alleged that he had delivered more grain than he had been given credit for. Brown testified that he had weighed 2,877,515 pounds of grain into certain storage bins designated as Bins 1, 2, 3, 4, 12, 13 and 14. From these bins he sold and delivered 598,080 pounds of grain to third parties and the balance was sold and delivered to Continental. According to Brown's figures the amount delivered to Continental was 2,279,435 pounds of barley, or $47,868.13 worth, which less the prepayment left a balance due him of $1,655.53. Brown also testified that Continental's agent, Raymond, sent trucks to the ranch to be loaded with grain. When each truck was loaded it left the ranch and it was under the control of Continental. Brown alleged that he did not receive receipts for all the deliveries. In theory, each truck after it left the Brown ranch was taken to a weighmaster's station where the grain was weighed. The total weight of the barley delivered was then determined by totaling all the weighmaster's certificates. These certificates were delivered to Raymond by the truck driver and he delivered them to the San Francisco office of Continental. According to Continental's records only $42,138.72 worth of grain was delivered to it.

The trial court found that the defendants had the complete and sole control of the barley grain delivered to the truckers at the bins and the weighing thereof; that some of the barley grain was weighed and copies of the weighmaster's certificates were delivered to plaintiff; that it was not true that all the weighmaster's certificates were delivered to plaintiff; and that the total sum due for the total barley grain delivered in accordance with said bills of sale at the rate of $2.10 per hundredweight was $47,868.13. Judgment was entered in favor of plaintiff in accordance with said findings.

Appellant makes a vigorous and able attack upon the findings and judgment and contends that there is no substantial evidence to support them. It argues that the evidence produced by Brown was weak and barely credible; that he was unable to show that any specific truckload was not weighed or that he did not receive a receipt for any specific load of grain. Appellant's argument would be entitled to great weight if it were addressed to a trial court upon a motion for a new trial, but unfortunately for appellant we are limited to the question of whether or not the record supports the judgment. Plaintiff Brown testified as to the amount of grain he had in his bins and to the amount delivered to appellant. This is substantial evidence in support of the judgment. Appellant also contends that the evidence by Brown of the amount of grain delivered was immaterial for the purpose of showing the grain delivered because the bill of sale provided that the amount of grain would be determined by the weighmaster's certificates and that this was the exclusive method of determining the amount. However, Brown was not attempting to challenge the accuracy of the certificates presented but claimed that he did not receive certificates for all of the grain delivered to Continental.

As we view the matter, the issue was one of fact and there was a clear conflict in the evidence. The trial court resolved that issue in favor of respondent and stated at the conclusion of the evidence: "I am inclined to believe that Mr. Brown had this grain in those bins; that he delivered the amount he said he did to you people; that there has been some mistake in the matter of weighing and the disposition of these weigh tags; and that that should not confer here a judgment in favor of you people. And, believing the Brown statement here, and I disbelieve the statement of these other people in connection with this matter, judgment will be rendered for the Plaintiff for the amount prayed for in the Complaint, plus costs."

Issues of fact are determined in the trial court, and we are satisfied that the record in the instant case gives substantial support to the judgment.

Appellant contends further that Judge Sischo was guilty of misconduct. This contention is based on the fact that Judge Sischo questioned witnesses. The trial judge was the trier of fact. It was not improper for him to examine witnesses for the purpose of eliciting information which he felt necessary for a determination of the case. Appellant also contends that Judge Sischo made up his mind before the case was concluded. There is no merit in this contention. At the conclusion of the case, after all the evidence was in and the cause submitted, Judge Sischo stated that he believed Brown and did not believe appellant's witnesses. While the latter remark was perhaps unnecessary, it merely reflected the court's analysis of the evidence.

Appellant's final contention of error is that it was deprived of its right to file objections to the proposed findings of fact. Section 634 of the Code of Civil Procedure provides that a judge shall not sign any findings within five days after service. Within five days after service a party may serve and file objections, counterfindings and requests for special findings. Section 1013 of the Code of Civil Procedure provides that when service is by mail the time within which an act is to be done by the adverse party is extended one day for each 100 miles distance between the place of deposit and the place of address if served by different post offices. Madera is about 162 miles from San Francisco, the address of appellant's attorneys. Findings were mailed from Madera on January 27, 1960. On February 1, 1960, objections and proposed amendments to the findings were mailed to the court. These were received in Madera on February 2d and mailed to Judge Sischo in Merced the same day. The findings of fact and the judgment were signed by Judge Sischo on February 2d and filed with the county clerk on February 3d. It would thus seem that the findings of fact and the judgment were signed by Judge Sischo before he received the objections. While this was an irregularity, it does not affect the validity of the judgment. (*Peebler* v. *Seawell*, 122 Cal.App.2d 503 [265 P.2d 109].) In the absence of a showing of prejudice, failure to comply with the section will be disregarded on appeal. (*Chamberlain* v. *Wakefield*, 95 Cal.App.2d 280 [213 P.2d 62].)

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.