[Civ. No. 32065.   Second Dist., Div. One.   Dec. 26, 1967.]

ELDON J. KOORSTAD, Plaintiff and Respondent, v. WASHINGTON NATIONAL INSURANCE COMPANY, Defendant and Appellant.

400

John C. Morrow for Defendant and Appellant.

Eldon J. Koorstad, in pro. per., for Plaintiff and Respondent.

FOURT, J.—Washington National Insurance Company (hereinafter sometimes referred to as Washington) appeals from a judgment entered in favor of Eldon J. Koorstad by the trial court, sitting without a jury, in this action to enforce a contract for insurance coverage and obtain sickness and disability payments thereunder.

Koorstad is an attorney who has been engaged in active practice for a number of years with offices in Downey, California. On February 13, 1963, Robert G. Lindgren, a Washington insurance salesman, called on Koorstad to service certain insurance policies already in force on his life. At that time Koorstad decided, upon Lindgren's recommendation, to make application to Washington for three new policies: a medical expense policy, a business expense policy, and an income disability policy (hereinafter sometimes referred to collectively as disability protection policies). Koorstad already had a policy with another company which provided similar coverage, and the renewal premium on that policy was to become due March 1, 1963. Koorstad wished to take out the new policies in lieu of the existing policy and accordingly he directed Lindgren to the effect that he did not wish to duplicate coverage but wanted the new policies to become effective March 1, 1963. Lindgren agreed that this should be accomplished.[1] The parties, however, stipulated during trial that Lindgren lacked authority to set the effective date of the insurance or to bind Washington to March 1, 1963, or to any other date upon which specific insurance coverage could commence.

---

[1] Koorstad testified: "The agreement was that they would be effective on March 1, 1963. There was no agreement that they would *not* be effective *before* that date, or that they would be effective *after* that date. The agreement was that they would be effective on March 1st; that there would be no lapse of coverage." (Italics added.)

Koorstad on February 13, 1963, signed application forms for the three new disability protection policies, but these forms were given to Lindgren undated. Koorstad at the same time applied for an additional life insurance policy from Washington. Lindgren told Koorstad that a physical examination would be required for the life insurance policy, but neither party mentioned a physical examination requirement in connection with the disability protection policies, or any of them. On the same day, Koorstad gave Lindgren two checks payable to Washington: one check dated February 13, 1963, for $13 as a premium deposit on the life policy, and the other check for $54 post-dated March 1, 1963, as one month's total premium on the disability protection policies. Lindgren accepted the checks, but did not give Koorstad the receipts which were attached to the disability protection policy applications. Koorstad was unaware of the attached receipt forms, which Lindgren did not point out to him, so he never requested them. Lindgren testified that he withheld the receipts because the three policies were not to become effective until March 1.

Lindgren immediately sent the life insurance premium to H. E. Nevonen Inc., the Los Angeles general insurance agency for Washington. Later he became concerned because he felt that the time required to process and issue the disability protection policies was so long that the work might not be completed within the grace period of Koorstad's expiring policy. With this in mind, on February 24, 1963, he dated and mailed the three disability protection policy applications also to H. E. Nevonen Inc. He did not in any manner advise the general agency that the policies requested were to be issued as of March 1, 1963. He enclosed with the applications his personal check of the same date made out to Washington to cover the first month's premiums, because he customarily covered post-dated checks in this manner. H. E. Nevonen Inc. received these applications, together with Lindgren's check, on or about February 25, 1963, and on February 26, 1963, it deposited these funds in its trust account and forwarded the applications to Washington's home office. Howard E. Nevonen as president of the Washington general agency testified that under these circumstances the next premium payment would normally become due March 24, 1963. Funds received in this manner were customarily held in the trust account pending Washington's action. Upon notice of Washington's approval the premium would be forwarded to the home office; if the

applications were disapproved, the premium payment would be returned to the applicant.

Lindgren gave no prior notice to Koorstad of his decision to send in the premium, but by an undated letter which Koorstad received on or about March 2, 1963, he returned Koorstad's post-dated check (which was made out to Washington) and requested that Koorstad send instead a check payable to Lindgren. Koorstad in response sent Lindgren a substitute check.

On February 27, 1963, the three disability protection policy applications were received at Washington's home office in Evanston, Illinois. On February 28, 1963, Koorstad was examined by his doctor who found a vascular insufficiency in his left leg. On March 2 a tentative diagnosis of arteriosclerosis was rendered and this was confirmed a few days later. Accordingly, Koorstad in early March telephoned Lindgren and advised him that he might have arteriosclerosis. Lindgren then for the first time called Washington's home office to advise them that the policies were not to become effective until March 1. About March 12, 1963, Koorstad again called to let Lindgren know that the diagnosis of arteriosclerosis had been confirmed. Lindgren by letter dated March 19 gave Washington written notice that he and Koorstad had originally proposed a March 1st effective date for the policies.

Washington never issued to Koorstad any policy or policies evidencing the requested disability protection coverage. Each of the three applications which Koorstad submitted to Washington for disability protection was declined on April 7, 1963, as he was advised by letter dated April 18, 1963, for the stated reason that Koorstad was uninsurable. Subsequently, Lindgren tendered to Koorstad checks drawn on the Nevonen agency trust account, which was carried under the name "Washington National Insurance Company," refunding the premium deposits paid on the three applications.

Koorstad brought the instant action to recover business expenses, loss of income, and medical expenses from Washington. The trial court found that Washington insured Koorstad for these three types of loss, pursuant to his applications and the payment of one month's premiums, commencing February 23, 1963, and for a period of one month. It further found that Koorstad's sickness, which gave rise to the subject action, became manifest on February 28, 1963, while the coverages were in effect, and that he gave prompt notice to the insurance company which was then obligated to pay benefits.

Appellant contends that (1) the evidence does not support the trial court's finding that Koorstad was insured by Washintgon for a period of one month commencing February 23, 1963; (2) as a matter of law there was no contract for insurance coverage between Koorstad and Washington; and (3) the trial court committed prejudicial error in rejecting an offer of certain evidence, limiting appellant's argument, permitting amendment of the complaint to conform to proof, and exercising bias which deprived appellant of a fair trial. These contentions are without merit.

The first two contentions will be considered together because of the close intermingling of the factual with the legal issues involved. Koorstad's complaint originally alleged an oral contract for insurance coverage to begin March 1, 1963. At the trial it was stipulated that Lindgren had no authority to bind the company to any specific date for the commencement of insurance coverage. The evidence, as hereinabove set forth, disclosed that on February 23, 1963, the salesman dated the applications and sent them with his personal check for the first month's premiums to appellant's general agency without specifying an effective date. The oral agreement was thus partially executed, in a manner subsequently acknowledged and endorsed by Koorstad who, upon Lindgren's request, sent a check to reimburse Lindgren. The insurance company's regular processing system was thus set in motion and its procedures became relevant. The court allowed Koorstad to amend his pleadings to conform to the proof, including the testimony of H. E. Nevonen and the deposition of one of Washington's home office executives. The court's findings were based upon the actual procedures of the insurance company. Testimony disclosed that Washington and its agents customarily accepted a premium payment with a policy application and, upon approval of the policy the company related the effective date thereof back to the date upon which the initial premium was paid. The court drew the reasonable inference that, barring evidence of uninsurability, Washington would in due course have issued policies to Koorstad with effective dates, in each instance, of February 23, 1963.

Appellant relies heavily upon the fact that Lindgren gave no receipts to Koorstad for the subject premium payments. This is not the decisive factor, nor should the insurance company be allowed to avoid liability because its salesman withheld from his customer the customary receipts upon forwarding the applications and premium payments to the

company. (See *Ransom* v. *Penn Mut. Life Ins. Co.*, 43 Cal.2d 420, 426 [274 P.2d 633].) The decisive issue, under a frequently reiterated rule of law, is what would be the ordinary layman's understanding of the insurance company's obligation under the circumstances of this case, including the fact that the applicant received no receipts. (*Steven* v. *Fidelity & Casualty Co.*, 58 Cal.2d 862, 871-872 [27 Cal.Rptr. 172, 377 P.2d 284]; *Gaunt* v. *John Hancock Mut. Life Ins. Co.*, 160 F.2d 599, 601-602.) ■ We note that ". . . California has aligned itself with those jurisdictions holding, in effect, that where an applicant for . . . insurance pays a prescribed premium, and the writings evidencing the transaction state that the insurance applied for is effective from date of application upon payment of the premium and company satisfaction of insurability, it will be deemed the parties intended the insurance to be effective forthwith, subject to termination upon notice from the company that the applicant is not insurable." (*Wernecke* v. *Pacific Fidelity Life Ins. Co.*, 238 Cal.App.2d 884, 886, 887 [48 Cal.Rptr. 251]; *Ransom* v. *Penn Mut. Life Ins., supra*, 43 Cal.2d 420; *Brunt* v. *Occidental Life Ins. Co.*, 223 Cal.App.2d 179 [35 Cal.Rptr. 492].) The insurance company which receives and accepts an insurance premium with a policy application is bound to provide temporary insurance protection; if no temporary coverage is to be afforded an applicant before the insurance company has determined the applicant's insurability, the company must make that condition precedent known in "unequivocal terms." (*Ransom* v. *Penn Mut. Life Ins. Co., supra*, p. 425.) Therefore, any ambiguous circumstance, including the agent's failure to deliver the applicant a receipt for the initial premium, must be resolved against the insurance company and in the applicant's favor. (*Steven* v. *Fidelity & Casualty Co., supra*, 58 Cal.2d 862, 868-870.) ■ There is no evidence that Koorstad was advised in unequivocal terms that there would be a delay in extending coverage. It is not relevant that Koorstad is an attorney since it has not been shown that he occupies a position, relative to the insurance company, superior to that of the ordinary layman who is entitled to protection according to his reasonable understanding.

The facts of this case, as hereinabove related, comport with the trial court's finding that when H. E. Nevonen, Inc. received the insurance premiums and applications pertaining to the subject insurance coverage, forwarded the applications and deposited the premiums in a trust account labelled

"Washington National Insurance Company," temporary insurance coverage started. The facts and the law are in accord with Koorstad's reasonable belief that he was insured; Washington became obligated to pay benefits for sickness which became manifest thereafter and before it rejected Koorstad's applications.

Appellant's final contentions are directed to the conduct of the court during the trial, which it claims constituted prejudicial error, and are based solely upon a difference of opinion between court and defense counsel concerning the inferences properly drawn from specific testimony given by H. E. Nevonen on cross-examination by Koorstad, who represented himself in propria persona.[2]

■ Appellant claims that the court badgered and intimidated Nevonen, and allowed Koorstad to do the same, thus disclosing bias and prejudgment of the issues. A review of the record discloses only that the court and Koorstad each firmly, but courteously, examined the witness. The witness was evasive and, as the court pointed out, attempted to be an advocate. However, neither the questioning nor the court's comment constitutes error. (*Brown* v. *Continental Grain Co.*, 190 Cal.App.2d 804, 807 [12 Cal.Rptr. 505]; *Schmitz* v. *Wetzel*, 188 Cal.App.2d 210, 213 [10 Cal.Rptr. 219].) ■ Nevonen's testimony completed the first phase of the trial, and the court then announced that it found a contract for insurance effective February 23, 1963. Appellant claims it was prejudicial error for the court to refuse to reopen that issue and allow appellant to recall Nevonen to explain his testimony on an offer of proof. Appellant had rested and argued, but he became displeased with the inference the court drew from the evidence. The court, however, made it clear that any further testimony from that witness would be suspect and there was no satisfactory showing that the witness might give further

---

[2]Koorstad, on cross-examination, elicited the following testimony from Howard E. Nevonen, president of H. E. Nevonen, Inc., the Washington general agent in Los Angeles:

"Q. When we last finished, sir, we were inquiring of you regarding the effective date of the policy, where an application had been taken and a check in payment of the first premium mailed to the company. Now assume, sir, that a check was given Mr. Lindgren on April—in February of 1963 regarding the plaintiff in this case, and that Mr. Lindgren dated the application the 24th day of February, mailed it to your offices on that date, and that you receipted for it on the 25th of February of 1963, assume further that the policy was issued, when would the next monthly premium be due?

"A. Twenty-fourth of next month.

"Q. Twenty-fourth of March, is that correct?

"A. Yes."

material, reliable testimony. The order of proof is within the sound discretion of the trial court (Cal. Evid. Code, § 320) and the court as trier of fact has the further obligation to evaluate the credibility of witnesses. It cannot be said that the trial court in this instance abused its discretion. █ Although appellant further claims that it was unduly limited in its opportunity for legal argument, this contention is not supported by the record. The court did not interfere with appellant's rights, but merely restrained appellant from engaging in argumentative and repetitious commentary, ultimately inviting both counsel to file legal briefs on certain issues.

█ Nor did the trial court, as claimed by appellant, abuse its discretion when it allowed Koorstad to amend his pleadings to conform to the proof. Appellant, upon leave of court, filed a brief opposing the motion, but the court found no material variance or surprise to appellant in its defense of the case. The question at issue was the existence of a contract, and once its existence was determined the effective date of coverage was relevant. Koorstad was allowed to change the date alleged from March 1, 1963, to February 23, 1963, in view of the evidence presented by appellant's own witness.

█ We find the evidence ample to sustain the court's findings, and the law in accord with its determination that an insurance contract existed to provide coverage which became effective on February 23, 1963. The record discloses neither prejudicial error nor abuse of discretion on the part of the trial court.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.