[No. C041384. Third Dist. Dec. 15, 2004.]

KARA HODGSON et al., Plaintiffs and Appellants, v.
BANNER LIFE INSURANCE COMPANY et al., Defendants and
Respondents.

## COUNSEL

Mart & deVries, Douglas K. deVries; Law Offices of Robert K. Scott and Robert K. Scott for Plaintiffs and Appellants.

Galton & Helm and Michael F. Bell for Defendant and Respondent Banner Life Insurance Company.

Epstein Becker & Green and Lawrence J. Rose for Defendants and Respondents BISYS Insurance Services and Poage Center Insurance Services.

## OPINION

**RAYE, Acting P. J.—** ██ Purchasers of life insurance are sometimes provided interim coverage while the application for insurance is being considered by the insurer. The terms of the interim coverage are set forth in a "conditional receipt," sometimes referred to as a " 'binder.' " (*Smith v. Westland Life Ins. Co.* (1975) 15 Cal.3d 111, 113 [123 Cal.Rptr. 649, 539 P.2d 433].) In the present matter, Michael Hodgson, father of plaintiffs Kara and Mikayla Hodgson and husband of plaintiff Carrie Hodgson, completed an application for life insurance with defendant Banner Life Insurance Company (Banner) and paid an initial premium.[1] The application included a conditional receipt. Defendants Poage Center Insurance Services and its successor, BISYS Insurance Services, (Poage) served as general agent for Banner. Within days, Banner returned the check for the initial premium and declared the conditional receipt ineffective, explaining that the company did not

---

[1] For clarity and convenience, we refer to the insured as Michael and to the plaintiffs collectively as Hodgson.

provide interim coverage for the policy amount sought by Michael. The company continued to process Michael's application for permanent coverage. Approximately two weeks later, Michael suffered mortal injuries in a motor vehicle accident. Banner considered the policy terminated prior to Michael's accident.

Hodgson filed a complaint against Banner alleging breach of contract, bad faith, conversion, and negligence, and requesting an accounting and imposition of a constructive trust. The complaint also alleged negligence against Poage. All parties filed motions for summary judgment. The trial court granted summary judgment in favor of Banner and Poage, finding that Michael had no insurance coverage with Banner and that Poage satisfied all its obligations to Michael. Hodgson appeals, contending Michael was covered by the Banner policy at the time of his death. We shall reverse the judgment in favor of Banner. We affirm the judgment in favor of Poage.

## FACTUAL AND PROCEDURAL BACKGROUND

Michael, a licensed life and disability insurance agent with Banner, submitted a Banner life insurance application requesting $500,000 in insurance on his life. Michael submitted an initial premium check in the amount of $210, payable to Banner.

The Banner application form submitted by Michael contained the following language: "WHEN INSURANCE TAKES EFFECT: Except as provided in the Conditional Receipt bearing the same number as this application, no insurance applied for will take effect until the full first premium is paid and such policy is delivered to the owner while all proposed insureds are living and their health remains as described in this application. If all of these take place, insurance will take effect on the policy date."

The Banner application also contained a conditional receipt form. The conditional receipt provides temporary or interim insurance coverage while Banner is underwriting the application. Banner issued a conditional receipt after Michael paid the initial premium.

Banner sets certain limitations on interim insurance coverage. When Michael applied for his policy, Banner limited interim insurance to applicants who applied for face amounts of life insurance of $250,000 or less. The company issued a memorandum to all of its general agents announcing the conditional receipt limits. Poage, a general agent of Banner, knew of the conditional receipt limitations. However, Poage used an older application package for Michael's application, in which the conditional receipt form referred to a limit of $500,000.

Banner's application package also included an "Authorization to Draw Checks in Payment of Life Insurance Premiums" (PAC form). The PAC form authorized Banner to draw directly from an insured's bank account for payment of monthly premiums. The process would begin after Michael's policy was approved. Banner never withdrew funds from Michael's account.

Michael submitted the application and initial premium check to Poage. Poage forwarded the application and premium to BI US, Inc. (BI US), who provided underwriting services for Banner. After reviewing the application, BI US prepared an audit sheet. The audit sheet contained the notation "Return ck" and a line item stating "Do not accept money on polic[i]es . . . (In Calif. over $250,000)." BI US forwarded the audit sheet and application to Banner's home office.

Banner assigned Michael's application a number and began the process of underwriting the application. Several days later, Banner returned the original premium check to Michael. The accompanying correspondence stated: "We are returning your payment of $210.00 received in connection with the above referenced application, since it is our practice not to accept a deposit on applications that exceed the limits under which a conditional receipt can be given. However, we will continue to underwrite this application. . . . [¶] Please return the conditional receipt to us for our file, since any coverage that may have been provided under the conditional receipt is no longer effective."

After Michael received the returned check, a Poage employee spoke with him. The employee's notes of the conversation state: "Agent called to see why his premium check was returned. Advised him because it was over the binding limit of $250,000 for California. Advised him that Banner (Life Insurance Co.) applications are incorrect as far as the conditional receipt information on them."

Following the return of Michael's check, Banner continued to underwrite his application. Banner's underwriter tentatively approved issuance of a standard life insurance policy subject to Michael's completion and submission of an alcohol questionnaire. Banner received the questionnaire and final underwriting approval was given for a policy with a face amount of $500,000. Banner notified Poage of the approval and policy issuance on June 1, 1999.

However, five days prior to this notification, on May 27, 1999, Michael suffered injuries in a motor vehicle collision that left him in a coma. He never recovered from his injuries and died in early 2000.

Poage received Michael's life insurance policy on June 7, 1999. Under Banner's procedures and policy terms, Michael's coverage could not be

effective unless (1) the policy was delivered to him while he was in the same health as described in his application; (2) he paid the first monthly premium; (3) he signed an amendment reflecting a change in the policy as issued ("non-tobacco") versus as applied for ("preferred non-tobacco"); and (4) he signed a delivery receipt.

Banner contended Michael's injuries and continuing coma were a material change in his health from the application and prevented him from completing the necessary requirements. Under this rationale, the policy did not become effective and was not delivered by Poage. Banner advised Poage to return the policy. Banner terminated the policy.

Hodgson filed suit against Banner, alleging breach of contract, bad faith, conversion, and negligence. The complaint also requested an accounting and formation of a constructive trust, and included a claim for punitive and exemplary damages. Against Poage, Hodgson alleged a cause of action for negligence.

Banner, Hodgson, and Poage each filed a motion for summary judgment. The court granted Banner's motion for summary judgment, finding, based on the undisputed facts and relevant case law: "[T]emporary insurance was created in favor of Michael Hodgson, that temporary insurance was then rescinded by Banner, and Mr. Hodgson did not have insurance coverage or a policy with Banner for $500,000 at the time that he died."

The court also granted Poage's motion for summary judgment, concluding: "Mr. Hodgson submitted an application for insurance using a form that Banner no longer used, which was known to Poage, although there is no evidence that it was known to Mr. Hodgson. Nevertheless, Poage processed the application and sent it on to Banner. On May 19, 1999, in response to Mr. Hodgson's phone call inquiring as to why his premium check had been returned, Poage advised him of the change in Banner's premium and conditional receipt practices. The information conveyed to Mr. Hodgson was true and correct. The actions taken by Poage satisfied all the obligations it had to Mr. Hodgson under the circumstances. Poage did not have an obligation to tell Mr. Hodgson his temporary insurance had been cancelled, since the letter from Banner already stated that. It also did not have an obligation to inform Mr. Hodgson of other options he might have."

Hodgson filed a timely notice of appeal from the judgment entered following the order granting summary judgment.

## DISCUSSION

### I

■ Summary judgment is properly granted if there is no question of fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719].) The moving party must demonstrate that under no hypothesis is there a material factual issue requiring a trial, whereupon the burden of proof shifts to the opposing party to show, by responsive statement and admissible evidence, that triable issues of fact exist. (*Chevron U.S.A., Inc. v. Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674]; *Lorenzen-Hughes v. MacElhenny, Levy & Co.* (1994) 24 Cal.App.4th 1684, 1688 [30 Cal.Rptr.2d 210].)

■ However, "[f]rom commencement to conclusion, the moving party bears the burden of persuasion that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. [Fn. omitted.] There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845 [107 Cal.Rptr.2d 841, 24 P.3d 493].) On appeal, we exercise our independent judgment to determine whether there are no triable issues of material fact and the moving party thus is entitled to judgment as a matter of law. (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1466 [55 Cal.Rptr.2d 415].)

### II

Hodgson argues that under the law governing temporary life insurance, Michael remained insured under the Banner life insurance policy up until the date of the accident that eventually claimed his life. Hodgson contends that since Banner had no legal reason to attempt to return the premium check and cancel the conditional receipt, the attempted termination was legally ineffective. Hodgson points to Banner's retention of the automatic check withdrawal authorization and continuation of the underwriting process as evidence Michael remained covered under the policy.

Banner and Poage interpret the facts far differently. Defendants contend the return of the check and notice to Michael that the conditional receipt was no longer effective terminated the temporary insurance coverage. According to Banner, Hodgson's interpretation of the statutes and case law is "far-too-literal."

Happily, the parties agree on the seminal cases construing temporary insurance. Unhappily, each side derives different standards for terminating temporary insurance from these authorities.

## III

The Supreme Court first considered issues involving temporary insurance in *Ransom v. Penn Mutual Life Ins. Co.* (1954) 43 Cal.2d 420 [274 P.2d 633] (*Ransom*). In *Ransom*, the insured, in response to Penn Mutual's solicitation, underwent a physical examination, submitted a written application for insurance on a Penn Mutual form, and paid the first premium. Penn Mutual requested another medical examination, but in the interim Ransom died in an automobile accident. (*Id.* at p. 422.) The Supreme Court considered whether an insurance agreement was in effect at the time of Ransom's death. (*Id.* at p. 423.)

The Penn Mutual application contained a conditional receipt, which provided in part that "if the Company is not satisfied as to such acceptability [acceptable under the Company's rules for insurance at the rate of premium and the amount applied for], no insurance shall be in force until both the first premium is paid in full and the policy is delivered while the health, habits, occupation and other facts relating to the Proposed Insured are the same as described in . . . this application . . . ." (*Ransom, supra,* 43 Cal.2d at p. 423.)

The court framed the question thusly: "We must determine whether a contract of insurance arose immediately upon receipt by defendant of the completed application with the premium payment, subject to the right of defendant to terminate the agreement if it subsequently concluded that Ransom was not acceptable, or whether, as defendant contends, its satisfaction as to Ransom's acceptability for insurance was a condition precedent to the existence of any contract." (*Ransom, supra,* 43 Cal.2d at p. 423.)

The court ultimately held that a contract of insurance arose upon Penn Mutual's receipt of the completed application and the first premium payment. The court reasoned that the language of the insurance application offered the applicant two alternatives—either pay the first premium upon signing the application, in which event " 'the insurance shall be in force . . . from the date . . . of the application,' " or pay upon receipt of the policy, in which event " 'no insurance shall be in force until . . . the policy is delivered.' " (*Ransom, supra,* 43 Cal.2d at p. 425.) This language created the reasonable belief that by paying the premium in advance, the applicant would secure the benefit of immediate coverage. As the court noted, "[t]here is an obvious advantage to the company in obtaining payment of the premium when the application is made, and it would be unconscionable to permit the company,

after using language to induce payment of the premium at that time, to escape the obligation which an ordinary applicant would reasonably believe had been undertaken by the insurer." (*Ibid.*) The court also found temporary insurance remains in effect even if the agent fails to detach and use the receipt form. (*Id.* at p. 426.)

The court acknowledged that some of the language of the application supported the insurance company's position that payment of the first premium and acceptability of the applicant were both conditions precedent to coverage. However, such language only created an ambiguity that, under the usual rules of contract interpretation, had to be resolved against the insurer. (*Ransom, supra,* 43 Cal.2d at p. 425.)

*Ransom* thus articulates a contract-based reasonable expectations doctrine. Ambiguous language in an application for insurance was interpreted to effectuate the reasonable expectations of the prospective policyholder to temporary coverage.[2]

The court in *Ransom* had no occasion to resolve the question of whether and how an insurer could terminate interim coverage created under a conditional receipt following payment of the first premium, though it noted that some courts had suggested coverage could be terminated only by rejection of the application and return of the premium payment. (*Ransom, supra,* 43 Cal.2d at p. 425.) That question was considered in a subsequent series of cases, each delineating the circumstances under which temporary insurance issues. In *Metropolitan Life Insurance Company v. Grant* (9th Cir. 1959) 268 F.2d 307, the language of the application was far more susceptible to a construction that coverage required acts of the company in addition to payment of the first premium. Nonetheless, the court concluded that under California precedent, the acceptance of premiums, not the delivery of the policy, created a reasonable expectation on the part of the applicant of immediate coverage. (*Id.* at p. 309.) In the court's view, the policy language at issue did not counter the applicant's reasonable expectation of coverage upon payment of the first premium. In *Metropolitan Life Insurance Company v. Wood* (9th Cir. 1962) 302 F.2d 802, the court held that the insurer's obligation arises when its agent accepts the application and a premium payment. The court rejected the insurer's argument that temporary

---

[2] It has never been the rule that a court could ignore the clear and explicit terms of an insurance policy under the guise of protecting the reasonable expectations of the insured, though courts have sometimes strained to find ambiguity where none existed. (*State Farm Mutual Auto. Ins. Co. v. Ball* (1981) 127 Cal.App.3d 568, 573 [179 Cal.Rptr. 644].) The reasonable expectations doctrine was later limited in *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807 [274 Cal.Rptr. 820, 799 P.2d 1253] and *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254 [10 Cal.Rptr.2d 538, 833 P.2d 545]. (See generally Croskey, *The Doctrine of Reasonable Expectations in California: A Judge's View* (1998) 5 Conn. Ins. L.J. 451.)

insurance comes into being only where the applicant is insurable when the application is submitted. (*Id.* at p. 803.)

In *Koorstad v. Washington Nat. Ins. Co.* (1967) 257 Cal.App.2d 399 [64 Cal.Rptr. 882], the court reaffirmed the basic rule set down in *Ransom* that temporary insurance protection arises when an insurance company receives and accepts an insurance premium with a policy application. (*Id.* at p. 405.) The court in *Thompson v. Occidental Life Ins. Co.* (1973) 9 Cal.3d 904 [109 Cal.Rptr. 473, 513 P.2d 353] considered a situation in which after the applicant paid a premium, the insurer decided to require an additional medical examination. Prior to being told of that decision, the applicant died. The insurer returned the premium check and denied coverage. (*Id.* at pp. 909–910.) The court found the insurance contract arose upon the applicant's payment of the first premium following his completion of the application and the initial medical examination. The court noted the insurer could rescind the contract of temporary insurance while the applicant was alive by determining the applicant was uninsurable. However, the insurer's right to rescind terminates upon the death or mortal injury of the applicant. (*Id.* at p. 912.)

In a pair of cases, courts grappled with issues similar to those presented in this case. In *Slobojan v. Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432 [74 Cal.Rptr. 895, 450 P.2d 271] (*Slobojan*), the applicant signed an application and paid the first month's premium. The insurance company's agent notified the applicant that the policy premium was higher than that quoted and requested the difference, approximately 44 cents, for the first and second months be remitted in the second month's premium payment. Five days later the applicant died. The insurer argued no coverage existed. (*Id.* at p. 436.)

The appellate court disagreed, noting "the applicant is offered a choice of either paying his first premium when he signs the application, in which event the insurance will be in force from the date of the application, or of paying upon receipt of the policy, in which event no insurance shall be in force until the policy is delivered." (*Slobojan, supra,* 70 Cal.2d at p. 440.)

The court also rejected the insurer's argument that the first month's premium was not paid in full since it was 44 cents short. The appellate court noted the first premium check was for the full premium quoted by the insurer's agent, "and under the circumstances shown here the ordinary person would believe that he had secured coverage by paying it." (*Slobojan, supra,* 70 Cal.2d at p. 441.) The insurer also claimed it rejected the applicant's application, terminating coverage. The court found the "defendant had accepted Slobojan as a risk and had issued the policy as applied for, but at a 44

cents per month premium increase for the $5,000 accidental death supplement—an increase which Slobojan had not rejected. Accordingly, no termination is shown of the insurance coverage which arose when Slobojan paid the first month's premium in advance." (*Ibid.*)

In *Smith v. Westland Life Ins. Co.* (1975) 15 Cal.3d 111 [123 Cal.Rptr. 649, 539 P.2d 433] (*Smith*), the applicant paid the first premium and submitted an application. The insurer processed the application but issued a policy that eliminated some provisions and increased the premium. The applicant refused to execute the amended application or pay the increased premium. After several unsuccessful attempts to obtain acceptance of the modified policy, the insurer's agent told the applicant his previously paid premium would be refunded. The applicant died the following day. (*Id.* at pp. 113–115.)

The insurer denied coverage. The trial court concluded temporary insurance had been created but had been terminated by rejection of the application and notice to the applicant. (*Smith, supra,* 15 Cal.3d at pp. 115–116.) The Supreme Court reversed.

■ The Supreme Court began by revisiting the formulation of temporary insurance by the *Ransom* court, noting *Ransom* "recognized that an ordinary person who pays the premium at the time he applies for insurance is justified in assuming that payment will bring immediate protection, regardless of whether or not the insurer ultimately decides to accept the risk." (*Smith, supra,* 15 Cal.3d at p. 122.) The court considered the rule for terminating temporary insurance in other jurisdictions, reviewed the reasoning behind temporary insurance, and concluded: "This reasonable expectation on the part of the applicant would, in our view, extend to a continuance of such coverage until the insurer had nullified the two factors responsible for its existence— the application for the policy by rejection and notice of rejection, and the payment of premium by a refund of it. Unless the insurer 'manifest[s] this intention [to refuse permanent coverage] by the return of the premium within a reasonable time, . . . the applicant could assume that his insurance was effective.' [Citation.]" (*Id.* at pp. 123–124.)

■ The *Smith* court stated its holding bluntly: "[W]here, as here, the insurer has received an application for insurance together with payment of the premium and thereafter decides to reject it, the contract of insurance immediately created upon the receipt of the application and payment of the premium is not terminated until (a) the insurer has actually rejected the application and by appropriate notice communicated such rejection to the insured and (b) refunded the premium payment to the insured." (*Smith, supra,* 15 Cal.3d at p. 121.) The court found such requirements not only logical, but also fair. The two-pronged requirement "eliminates uncertainty as to coverage and controversy as to effective notice of rejection." (*Id.* at p. 124.)

## IV

█ *Smith* and the other cases establishing the parameters of temporary insurance focus on the reasonable expectation of the applicant. As Banner correctly notes, *Smith* holds that "[a]n applicant's reasonable expectation of immediate coverage continues until the insurer nullifies the factors responsible for its existence—the request for coverage and the payment of premium." Michael's reasonable expectation of continuing coverage ceased when Banner returned his premium payment and informed him that "any coverage that may have been provided under the conditional receipt is no longer effective."

Hodgson acknowledges that Banner returned the premium payment but finds greater significance in Banner's failure to cancel or disavow its authorization to draw premium payments from Michael's bank account through the PAC form. According to Hodgson, the receipt of the authorization "constitutes immediate constructive receipt of the premium sufficient to create temporary life insurance." Further, according to Hodgson, Banner's decision to continue underwriting Michael's application negates any claim that Banner canceled the policy. We disagree.

The undisputed facts reveal Michael submitted a check for the initial premium; Banner returned the check. The return of the premium check complies with the requirement in *Smith* that the insurer "refunded the premium payment to the insured." (*Smith, supra*, 15 Cal.3d at p. 121.) Michael's completion and Banner's retention of the PAC form does not change this result. The PAC form was filled out in anticipation of payment of subsequent premiums after the policy was approved. No further premiums were paid by Michael or deducted from his account by Banner via the PAC form.

The return of the premium check is completely at odds with the notion that Banner was extending temporary coverage. True, when Banner returned Michael's initial premium payment, it informed him it intended to continue to underwrite his application. However, the letter also stated: "Please return the conditional receipt to us for our file, since any coverage that may have been provided under the conditional receipt is no longer effective."

To terminate temporary insurance, *Smith* requires that "the insurer has actually rejected the application and by appropriate notice communicated such rejection to the insured." (*Smith, supra*, 15 Cal.3d at p. 121.) Here, Banner unequivocally notified Michael that the coverage he applied for was not available and he would not be covered. The letter that accompanied the refund of the premium does not lend itself to the "uncertainty as to coverage

and controversy as to effective notice of rejection" (*id.* at p. 124) disparaged by the Supreme Court in *Smith*. *Smith* strove to eliminate the mystery surrounding whether or not temporary coverage ceased in an effort to protect the reasonable expectations of an applicant. The notice in the present case fully comports with the stated aims of *Smith*, informing any reasonable applicant that his or her application for the requested policy has been rejected.

In *Smith* and all of the cases thus far discussed, the insurance company retained an initial premium payment but sought to deny coverage upon the applicant's death prior to a determination of insurability and before the delivery of policy documents. In each case, the court concluded, based on the reasonable expectation of the applicant, that interim coverage arises upon payment of the premium and such coverage continues until the application is rejected prior to the event insured against. In the present case, Banner did not retain the initial premium payment and unequivocally denied the existence of interim coverage but nonetheless continued to process Michael's application for insurance. Ultimately, the application was approved, though the terms of the approval are disputed.

Hodgson argues that Banner's continued processing of Michael's application for permanent insurance undermined its coverage disclaimer and thus created a reasonable expectation of temporary coverage. We are not persuaded that this fact should alter our analysis of the holding in *Smith* and the other cases previously discussed. The argument does, however, invoke the provisions of Insurance Code section 10115, which are dispositive of this appeal.[3]

## V

Section 10115 states: "When a payment is made equal to the full first premium at the time an application for life insurance other than group life insurance is signed by the applicant and either (1) the applicant received at that time a receipt for said payment on a form prepared by the insurer, or (2) in the absence of such a receipt the insurer receives the said payment at its home office . . . , and in either case the insurer, pursuant to its regular underwriting practices and standards, approves the application for the issuance by it of a policy of life insurance on the plan and for the class of risk and amount of insurance applied for, and the person to be insured dies on or after the date of the application, on or after the date of the medical examination, if any, or on or after any date specially requested in the application for the policy to take effect, whichever is later, but before such

---

[3] All further statutory references are to the Insurance Code.

policy is issued and delivered, the insurer shall pay such amount as would have been due under the terms of the policy in the same manner and subject to the same rights, conditions and defenses as if such policy had been issued and delivered on the date the application was signed by the applicant. The provisions of this section shall not prohibit an insurer from limiting the maximum amount for which it may be liable prior to actual issuance and delivery of the policy of life insurance either to (1) an amount not less than its established maximum retention, or to (2) fifty thousand dollars ($50,000), if a statement to this effect is included in the application."

Banner denigrates the significance of section 10115 by describing it as "long-winded." Banner also seems to assert that whatever force the statute might have had was vitiated by the Supreme Court's decision in *Ransom*, the implication being that the Supreme Court can substitute its own rule of law for one enacted by the Legislature. Long-winded or not, we must apply section 10115 according to its terms. The Supreme Court has never undertaken to abrogate a statute absent a constitutional violation. There is nothing in the *Ransom* decision that even hints it was intended to affect the application of section 10115. Indeed, the *Ransom* holding and section 10115 cover different territory.

■ Under section 10115, when a prospective insured makes a first premium payment concurrently with the submittal of an insurance application and either receives a form receipt for the premium or the insurer receives the payment at its home office, and the insurer approves the application for the class of risk and amount applied for, if the applicant dies on or after the date of the application, the "insurer shall pay such amount as would have been due under the terms of the policy . . . as if such policy had been issued and delivered on the date the application was signed by the applicant."

■ Unlike the issue of temporary coverage raised when an applicant for life insurance dies before the application has been approved, the issue presented in *Ransom*, section 10115 addresses the issue of coverage when the application has been approved but the policy has not been issued and delivered at the time of the insured's death. Under the rule of *Ransom* and its progeny, the retention of a premium payment, in light of the conditional receipt issued by the insurance company, may create a reasonable expectation of coverage in the mind of the applicant. Section 10115, on the other hand, imposes a coverage obligation whenever the conditions for issuance of a policy of insurance have been satisfied but the formalities of issuance and

deliverance have not occurred. This obligation is imposed by law and does not rest on the reasonable expectation of the parties based on the language of a conditional receipt and the acceptance of an initial premium payment.

Here, the second requirement of section 10115 is literally met. Michael submitted an application with a premium check and the same was received at Banner's home office. Though Banner later returned the check, it retained the ability to secure payment of the monthly premium from Michael's bank account and continued to underwrite his application.[4] Ultimately, Banner approved the application. Banner contends it "did not approve [Michael's] application 'for the rate and plan applied for.' [Michael] applied for a preferred, non-tobacco policy. Banner, instead, approved a standard, non-tobacco policy." However, as Hodgson points out, Michael applied for *either* preferred nontobacco or standard nontobacco, and Michael approved the standard nontobacco choice. There was no variance.

Section 10115 also states: "The provisions of this section shall not prohibit an insurer from limiting the maximum amount for which it may be liable prior to actual issuance and delivery of the policy of life insurance either to (1) an amount not less than its established maximum retention, or to (2) fifty thousand dollars ($50,000), if a statement to this effect is included in the application."

The Banner application Michael filled out states: "Maximum Amount: The amount of insurance becoming effective under this Conditional Receipt is limited to the extent that the total liability of the Company for the death of each person proposed for insurance in the application shall not exceed $500,000 to issue age 75 and $200,000 between issue age(s) 76 and 80. . . . Such amount includes: (a) life insurance then in force with the Company and (b) any benefits payable by the Company as a result of accidental death." As it acknowledged at oral argument, Banner did not otherwise limit its liability.

We conclude, therefore, that the undisputed facts of this case satisfy the requirements for coverage under section 10115. Accordingly, the judgment of the trial court must be reversed as to Banner. Our conclusion renders consideration of appellant's argument regarding Poage/BISYS unnecessary.

---

[4] The return of the premium payment does not have the same significance under section 10115 that it has under the rule of *Smith* and the other cases discussed. Under *Smith*, a return of the premium payment undermines any expectation of coverage. As noted, coverage under section 10115 is not premised on an applicant's reasonable expectations; it is an obligation imposed on insurers no matter the expectation of the parties.

## DISPOSITION

The order of the trial court granting summary judgment in favor of Banner and the judgment thereafter entered are vacated. The judgment in favor of Poage is affirmed. The matter is remanded to the trial court with directions that it enter an order granting Hodgson's motion for summary judgment against Banner. Poage shall recover its costs on appeal. Hodgson shall recover costs on appeal against Banner.

Butz, J., concurred.

**HULL, J.**—I concur except as to part V of the majority opinion, in which I concur in the result.

Insurance Code section 10115 (all unspecified statutory references are to the Insurance Code) provides where an applicant dies before a life insurance policy for which he has applied has been issued, the policy will be in effect as if the policy had been issued and delivered on the date of the application (all other conditions of the statute having been met) if "*payment* is made equal to the full first premium at the time [the] application for life insurance . . . is signed by the applicant and either (1) the applicant received at that time a receipt for said payment on a form prepared by the insurer, or (2) in the absence of such a receipt the insurer *receives the said payment* at its home office. . . ." (*Ibid.*, italics added.)

The parties agree Michael did not receive a receipt for payment on a form prepared by Banner at the time he signed his application, and that Banner received Michael's personal check for the first month's premium at its home office and returned it to him without it having been negotiated.

On these facts, the majority holds "the second requirement of section 10115 is literally met. Michael submitted an application with a premium check and the same was received at Banner's home office. Though Banner later returned the check, it retained the ability to secure payment of the monthly premium from Michael's bank account and continued to underwrite his application." (Maj. opn., *ante*, at p. 1373.)

In commercial transactions, "[t]he mere giving of a check does not constitute payment [citations] nor does the mere acceptance thereof raise a presumption that such acceptance constitutes payment. [Citation.] And since a check of itself is not payment until cashed the party attempting to prove payment by mere delivery or acceptance must go further and in addition prove that such delivery and acceptance was in accordance with an agreement that it was to be accepted as payment." (*Mendiondo v. Greitman* (1949) 93 Cal.App.2d 765, 767 [209 P.2d 817]; see *Navrides v. Zurich Ins. Co.* (1971) 5 Cal.3d 698, 706 [97 Cal.Rptr. 309, 488 P.2d 637]; *Hale v. Bohannon* (1952) 38 Cal.2d 458, 467 [241 P.2d 4].) These concepts apply in the context of

insurance contracts. (*Kansas City Life Ins. Co. v. Davis* (1938) 95 F.2d 952, 957 [law settled that check made in payment of insurance premiums is taken conditionally unless there is a special agreement that it is received in absolute payment]; see generally 5 Holmes's Appleman on Insurance 2d (1998) Law of Insurance Premiums, § 27.11, pp. 308–312.)

Given the above, there is a question whether receipt of a check that was never negotiated is receipt of *payment* within the meaning of section 10115. It is a question that is, in my view, unresolved by the present appeal since the parties did not litigate it in the trial court and did not adequately address it here despite the fact we drew the parties' particular attention to the applicability of the statute prior to oral argument. While, without reference to the record or to pertinent authorities, Banner stated in passing the statute did not apply because Banner had not "accepted" the check, it did not argue that receipt of the check did not constitute payment within the meaning of section 10115.

On this record, one may be tempted to say section 10115 does not apply because receipt of the check was not receipt of payment unless there was an agreement that receipt of the check alone would be sufficient and Hodgson did not prove there was such an agreement. But it would be improper for us to do so where Banner chose not to defend against the applicability of the statute on that basis. Perhaps the issue was not raised because there was an agreement or because there was at the time of receipt sufficient funds in Michael's account to honor the check and Banner thought that would be enough to satisfy the statute. In any event, Banner approached the matter as though receipt of the check was sufficient and we must let the parties pursue the issues they want to litigate.

Further, in my view, the fact that Michael submitted an "Authorization to Draw Checks in Payment of Life Insurance" through which Banner had the ability to secure payment of future monthly premiums is of no consequence in determining the applicability of section 10115, at least absent an agreement between the parties to the contrary. To the extent the court's decision in *Logan v. John Hancock Mut. Life Ins. Co.* (1974) 41 Cal.App.3d 988, 992 [116 Cal.Rptr. 528] can be read to say that providing such an authorization without the agreement of the insurer that the authorization constitutes payment within the meaning of section 10115, I must respectfully disagree with it. The statute simply makes no mention of an ability to secure payment of later premiums as having an effect on coverage under the circumstances

addressed by section 10115. The requirements of the statute are explicit; if they are met, the statutory provisions apply, if they are not met, there is no coverage.

I concur in the result as to part V.

A petition for a rehearing was denied January 12, 2005, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied April 13, 2005.